IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Eddie Washington, ) | C/A No.: 0:21-98-MGL-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| U.S. Department of Homeland ) | |
| Security, Chad F. Wolf in his ) | |
| Official Capacity, U.S. ) | REPORT AND |
| Immigration and Customs ) | RECOMMENDATION |
| Enforcement, Tony Pham in his ) | AND ORDER |
| Official Capacity, Attorney ) | |
| General, York County, York ) | |
| County Sheriff's Office, Sergeant ) | |
| Nicholas Schifferle as an employee ) | |
| of York County Sheriff's Office, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Eddie Washington ("Plaintiff") filed this suit on January 11, 2021, against the U.S. Department of Homeland Security, Chad F. Wolf in his official capacity, U.S. Immigration and Customs Enforcement ("ICE"), Tony Pham in his official capacity, the Attorney General, York County, York County Sheriff's Office ("YCSO"), and YCSO employee Sergeant Nicholas Schifferle ("Schifferle"). In his amended complaint, Plaintiff asserts eleven causes of action that can be divided into three groups: (1) claims brought pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights (first, second, fourth, sixth, and eighth causes of action), (2) claims for violations of

the South Carolina Constitution (third, fifth, seventh, and ninth causes of action), and (3) state-law claims for civil conspiracy (tenth cause of action) and conversion/claim and delivery (eleventh cause of action).

This matter comes before the court on the motions to dismiss and for protective order filed by York County and YCSO (collectively "Defendants"). [ECF Nos. 19, 20]. Defendants' motion to dismiss having been fully briefed [*see* ECF Nos. 22, 23], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.), this case has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned grants Defendants' motion for protective order in part and recommends the district judge grant in part and deny in part Defendants' motion to dismiss.

I. Factual Background

Plaintiff alleges that on or about July 16, 2020, he was travelling south on Interstate 77 when he was stopped by Schifferle. [ECF No. 12 ¶ 14]. Schifferle advised Plaintiff he was being stopped for failure to use headlights when required. *Id.* ¶ 15. For an unknown reason, Schifferle called a drug dog out to the scene. *Id.* ¶ 16. Although no drugs were found, $55,140 was found in Plaintiff's vehicle and seized at the time of the traffic stop. *Id.* ¶¶ 16–17.

Plaintiff was not arrested and alleges that at no time prior, during, or after the seizure was he engaged in unlawful activity. *Id.* ¶ 18. The only citation he received was for failure to use headlights when required pursuant to S. C. Code Ann § 56-05-4450, a misdemeanor with a potential penalty of up to 30 days in jail and/or a fine up to $25. *Id.* ¶ 19.

Plaintiff alleges ICE is now in possession and control of the seized money, but was not involved in the traffic stop or present at the time of the seizure. *Id.* ¶¶ 20–21. Plaintiff alleges that, according to ICE, the money was seized pursuant to 19 U.S.C. § 981(a)(1), 18 U.S.C. § 1956(a)(1), and 18 U.S.C. § 1961 for conducting a financial transaction to promote a specified unlawful activity, but no unlawful activity has been alleged or specified. *Id.* ¶ 22.

II.   Discussion

    A.   Standard on Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

3

570 (2007) ). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244. Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

  B. Analysis

    1. Claims Brought Pursuant to 42 U.S.C. § 1983

The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The United States Supreme Court has long held the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

Because YCSO is considered an arm of the state and not a "person" within the meaning of § 1983, Plaintiff cannot bring suit against YCSO for

4

monetary damages. *See Gulledge v. Smart*, 691 F. Supp. 947, 954–55 (D.S.C. 1988) (addressing whether sheriffs in South Carolina are state or county officials); *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (holding that the Greenville County Sheriff, in his official capacity, was immune from suit for monetary damages under § 1983); *Cone v. Nettles*, 417 S.E.2d 523, 524–25 (S.C. 1992) (concluding that South Carolina sheriffs and their deputies are state officials for purposes of § 1983); *McCall v. Williams*, 52 F. Supp. 2d 611, 623, (D.S.C. 1999) ("[T]he Sheriff's Department, like the Sheriff, is an arm of the state and entitled to Eleventh Amendment immunity."). *Smith v. Carter*, C/A No. 9:19-967-HMH-BM, 2019 WL 6532957, at *2 (D.S.C. Nov. 5, 2019) ("Further, even if an otherwise proper claim had been alleged against these Defendants, Defendant Charleston County Sheriff's Office and Defendant Sheriff Al Cannon (in his official capacity) are entitled to Eleventh Amendment immunity from a suit for monetary damages because Sheriff's Departments in South Carolina are state agencies, not municipal departments, and Sheriffs and their deputies are state employees."), report and recommendation adopted, C/A No. 9:19-967-HMH-BM, 2019 WL 6524676 (D.S.C. Dec. 4, 2019).

Plaintiff incorrectly asserts that YCSO can be sued pursuant to 42 U.S.C. § 1983 under Supreme Court precedent. [ECF No. 22 at 3]. However,

5

while counties can be subject to liability under 42 U.S.C. § 1983 under what is commonly referred to as a *Monell* claim, South Carolina sheriff's offices cannot, as stated above. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (noting that for purposes of § 1983, a person includes individuals and bodies politic and corporate).[1]

Turning to Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983 against York County, Defendants argue that Plaintiff has failed to state a claim where he has alleged only that YCSO is a "division of Defendant York County" and that Schifferle "is an Agent and employee of Defendant County and/or Defendant Sheriff's Office." [ECF No. 19 at 3].

Defendants argue, and Plaintiff agrees, that YCSO and York County are separate and distinct legal entities. *See, e.g., Patel by Patel v. McIntyre*, 667 F.Supp. 1131, 1146 (D.S.C. 1987) ("it is well established in South Carolina case law that law enforcement at the county level is the exclusive province of the sheriff") (citation omitted), *aff'd sub nom. Patel by Patel v. Dyar*, 848 F.2d 185 (4th Cir. 1988). Notwithstanding, Plaintiff argues that he has "sufficiently pled the seizure was conducted at the behest of policies and

---

[1] Plaintiff's invocation of *Cento v. Marion Cty. Sheriff's Office*, C/A No. 117-00431-TWP-DLP, 2018 WL 3872221 (S.D. Ind. Aug. 15, 2018) is inapplicable where, in that case, the court applied Indiana, not South Carolina, law to deny summary judgment to the Marion County Sheriff's Office as to a claim for deliberate indifference to an inmate's serious medical need.

procedures of both federal and state agencies including York County," and that YCSO "is essentially an arm of Defendant York County." [ECF No. 22 at 4]. Plaintiff further argues that the taking of his "currency without any nexus to criminal activity" is a policy or custom that violates his constitutional rights, York County has adopted YCSO's policies and procedures, but also that York County is able to change the policies and procedures at issue in this case. *See id.*

Plaintiff is mistaken. In South Carolina, a sheriff's office is an agency of the state, not a department under the control of a county. *Millmine v. Cty. of Lexington (S.C.)*, C/A No. 3:09-1644-CMC, 2011 WL 182875, at *5 (D.S.C. Jan. 20, 2011) ("In South Carolina, a sheriff's department is an agency of the state, not a department under the control of the county."); *Gulledge v. Smart*, 691 F. Supp. 947, 954–55 (D.S.C.1988) (discussing sheriff as agent and alter ego of state and that deputy sheriffs act as the sheriff's agents), *aff'd*, 878 F.2d 379 (4th Cir. 1989). Therefore, York County has no control over the actions or policies implemented by YCSO. *See Allen v. Fid. & Deposit Co.*, 515 F. Supp. 1185, 1191 (D.S.C. 1981) ("by long established custom and practice now firmly established as the policy and law of this State, the County of Aiken is precluded from exercising any supervisory function or control over the sheriff or his deputies, and, accordingly, it has been relieved

of responsibilities for him or his deputies in the performance of their official duties"), *aff'd*, 694 F.2d 716 (4th Cir. 1982).[2]

Accordingly, the undersigned recommends granting Defendants' motion to dismiss Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983 against both YCSO and York County for monetary damages.

2. South Carolina Constitutional Claims

Defendants argue that South Carolina has not adopted an equivalent to 42 U.S.C. § 1983, and therefore there is no private right of action for money damages for alleged violations of the South Carolina Constitution. [ECF No. 19 at 4]. In response, Plaintiff points to no constitutional provision or enabling statue allowing for civil damages for the violations of the South Carolina Constitution he has alleged. [*See* ECF No. 12 ¶¶ 32–36 (excessive fines), 41–43 (due process), 49–53 (institutionally incentivize forfeiture officials), 61–67 (failure to provide judicial review or judicial authorization); *see also* ECF No. 22 at 5]. As this court has stated, "South Carolina does not recognize a cause of action for monetary damages for constitutional

---

[2] Plaintiff does not argue, and the complaint does not evince, that he has asserted a *Monell* claim against York County. *See, e.g., Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (holding a municipality may be liable under § 1983 for the violation of a plaintiff's constitutional rights "only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'") (citing *Monell*, 436 U.S. at 694).

8

violations." *Shuler v. N. Charleston Police Dep't*, C/A No. 2:19-1013-MGL-PJG, 2020 WL 1322870, at *5 n.7 (D.S.C. Mar. 19, 2020) (citing *Palmer v. State*, 829 S.E.2d 255, 261 (S.C. Ct. App. 2019)), report and recommendation adopted, C/A No. 2:19-1013-MGL-PJG, 2020 WL 1892216 (D.S.C. Apr. 16, 2020).

Accordingly, the undersigned recommends granting Defendants' motion to dismiss as to claims for violations of the South Carolina Constitution against both YCSO and York County.[3]

### 3.   State-Law Claims

The South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-70 *et seq.* ("SCTCA"), is "the exclusive remedy for any tort committed by an employee of a governmental entity." S.C. Code Ann. § 15-78-70(a). "The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained" within the SCTCA. S.C. Code Ann. § 15-78-40. As relevant here, the SCTCA additionally provides a

---

[3] Based on the above recommendation, the undersigned further recommends that Plaintiff's request for declaratory relief be denied as to Defendants, where the request is grounded in Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 and for violations of the South Carolina Constitution. [*See* ECF No. 12 at 13].

"governmental entity is not liable for the loss resulting from" (1) "employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude," S.C. Code Ann. § 15-78-60(17); *see also id.* at § 15-78-70(b).

Plaintiff brings claims for civil conspiracy and conversion. First, under South Carolina law, "[a] civil conspiracy . . . consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." *Lee v. Chesterfield Gen. Hosp., Inc.*, 344 S.E.2d 379, 382 (S.C. 1986) (citations omitted). Here, because the tort of civil conspiracy requires a showing of an intent to harm, pursuant to S.C. Code Ann. § 15-78-60(17) a governmental entity cannot be held liable for this employee conduct. *See, e.g., Doe v. The Citadel*, No. 2015-001920, 2017 WL 4786974, at *2 (S.C. Ct. App. July 12, 2017) ("Last, we hold the circuit court correctly granted summary judgment to The Citadel on Mother's civil conspiracy claim. The Citadel, a governmental entity, is immune from liability for conduct in which its employees intend to harm a plaintiff.") (citing S.C. Code Ann. § 15-78-60(17)); *Peirce v. Bryant*, C/A No. 4:14-2927-BHH-TER, 2016 WL 11410276, at *5 (D.S.C. Feb. 1, 2016), report and recommendation adopted, C/A No. 4:14-2927-BHH, 2016 WL 1061060 (D.S.C. Mar. 17, 2016) (same).

10

Accordingly, the undersigned recommends the district judge grant Defendants' motion to dismiss Plaintiff's claim for civil conspiracy as to both YCSO and York County.

Second, under South Carolina law, a plaintiff asserting the tort of conversion must show that the defendant, without authorization, assumed and exercised the right of ownership over goods or personal chattels belonging to another to the exclusion of the plaintiff's rights. *Moore v. Weinberg*, 681 S.E.2d 875, 878 (S.C. 2009) (citing *SSI Med. Servs., Inc. v. Cox*, 392 S.E.2d 789, 792 (S.C. 1990)). The plaintiff must establish either title to or right to the possession of the personal property. *Moseley v. Oswald*, 656 S.E.2d 380, 382 (S.C. 2008) (citing *Crane v. Citicorp Nat'l Servs., Inc.*, 437 S.E.2d 50, 52 (S.C. 1993)). Money may be the subject of a conversion claim if the money is capable of being identified. *Moore*, 681 S.E.2d at 878.

Defendants argue Plaintiff's conversion claim should be dismissed as to them because Plaintiff alleges that ICE, and not Defendants, are now in possession of Plaintiff's property. Plaintiff responds that Defendants could come into possession of his property, and, because discovery has yet to be conducted, Plaintiff could discover Defendants are in possession of some or all of his property. [*See* ECF No. 22 at 6].

The undersigned declines to recommend dismissal of Plaintiff's claim for conversion against YCSO where, here, Plaintiff has alleged that a specific sum was taken from him by Schifferle on behalf of YCSO and transferred to ICE, and Defendants cite to no authority, and the court is aware of none, requiring Plaintiff to allege both (1) YCSO, without authorization, exercised ownership over Plaintiff's property, and (2) YCSO retained possession of that property. *See, e.g., Moore*, 681 S.E.2d at 878–79 (finding the trial court should have denied the defendant's motion for summary judgment as to the plaintiff's conversion claim because the plaintiff put forth evidence that he owned an interest in the proceeds from litigation, that the defendant was aware of the plaintiff's interest, and the defendant wrongfully disbursed the proceeds); *Aimsley Enterprises Inc. v. Merryman*, C/A No. 19-02101-YGR, 2020 WL 1677330, at *10 (N.D. Cal. Apr. 6, 2020) ("An allegation that the defendant is still in *possession* of the identified funds is not required" for a claim of conversion) (emphasis in original).

Because Defendants put forth no further reason why Plaintiff's claim for conversion should be dismissed, the undersigned recommends the district judge deny the motion to dismiss as to this claim against YCSO. However, Plaintiff has not alleged that York County, at any point in time, exercised ownership of his property without authorization. Accordingly, the

undersigned recommends the court grant Defendants' motion to dismiss Plaintiff's conversion claim as to York County.[4]

### 4. Defendants' Motion for Protective Order

Defendants request an order "protecting them from participating and/or responding to any discovery requests in this case until such time as their pending motion to dismiss can be heard and decided." [ECF No. 20]. Plaintiff has not responded Defendants' motion.

Defendants' motion for protective order is granted in part. Because the undersigned recommends all claims against York County be dismissed, York County is protected from participating and/or responding to any discovery requests in this case until Defendants' motion to dismiss is resolved. YCSO is similarly protected, except as to Plaintiff's claim for conversion.

## III. Conclusion and Recommendation

For the foregoing reasons, the undersigned grants Defendants' motion for protective order in part [ECF No. 20] and recommends the district judge grant in part and deny in part Defendants' motion to dismiss, dismissing York County from this action. More specifically, the undersigned recommends dismissal of Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983

---

[4] Based on the above recommendation, the undersigned further recommends that Plaintiff's request for "permanent injunction compelling Defendants to return Plaintiff's property to Plaintiff" be denied as to York County. [*See* ECF No. 12 at 13].

for money damages, claims for violations of the South Carolina Constitution, and claim for civil conspiracy, against both YCSO and York County, and Plaintiff's claim for conversion against York County only. [ECF No. 19].

    IT IS SO ORDERED AND RECOMMENDED.

March 3, 2021                                           Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).